Good morning. May it please the Court, in concluding that the Public Disclosure Bar precluded this action, the Court made three errors. First, it erred as a matter of law in equating a disclosure to the government or government officials with a disclosure to the public. It relied on a single case, the Farmington case, Seventh Circuit decision. No other federal court has adopted the reasoning or the holding in Farmington. In fact, several circuits have ruled to the contrary. Those decisions are supported both by the plain meaning of the text and the legislative history. The legislative history is that in 1986, the 1986 amendments, one of the most important things that the amendments did was to eliminate the government knowledge bar. Up until that time, if the government had knowledge of the fraud, that precluded a Keatham Relator from bringing the lawsuit and basically no lawsuits were effectively brought during that period of time. Now there's billions of dollars recovered every year under the Public Disclosure Bar. In fact, at that time, they had a person in the Department of Justice, all he did was when a Keatham claim came in, he would go and find any evidence of the fraud in the government's files and then move to dismiss the case. So that's why basically there was typically some kind of evidence in the government's files for most of those lawsuits. So they were almost all of them dismissed. So what the Farmington case is holding would basically reintroduce the government knowledge bar. And so the legislative history clearly shows that that would be contrary to the purpose of the Keatham statute. And it's also supported by the plain meaning. So the amendment abolished government knowledge bar. Yes. And that amended statute is what appears. Yes. This is the... To whom, what government agencies did have knowledge here? Well, with respect to the USDA report, it was law enforcement agencies, basically. It is true that they weren't exclusively federal, but as... And I was just about to ask you about that. Well, what about... Well, as the Ramsayer decision holds... Which case? That's the 10th Circuit. And this is the Ramsayer decision was relied upon by this court and it's holding in the remand decision. And basically it was saying that that doesn't really change the analysis. That here you have the government just having knowledge and it's not out in the public domain. The state local government was at issue in that case? It was the state... There was knowledge by the local government entity? It was the state government. Or a state government entity. Yes. It was the state government audit. And the audit had just never been disseminated to the public. And this ties into a related issue is that this court in remanding said that the district court needed to determine whether these reports were actually publicly disclosed. And they cite the Ramsayer case which says basically that case holds a report that is only theoretically or potentially available to the public, cannot constitute a public disclosure. Did they talk about a public information act in relation to that? Yes. The FOIA, they said yes. The fact that the public has the right to ask for it if they learn about it. I understand. I heard the language that you read. Did they specifically reference a FOIA or a public information act? In Ramsayer, yes. Yes, Your Honor. They did. And they said that just having that availability so that the public could have gotten this information didn't make it publicly disclosed? Yes, Your Honor. That's the holding on that. And I think this is, you know, it does violence to the language to say that something's been publicly disclosed when in fact it's just sitting in a file cabinet in a government office. Was the indictment a public disclosure? I think the indictment could have been a public disclosure, but the indictment simply was what was accusing him of stealing logs. That was basically it. It's not even in the record. It's not in the appendix. And it's not something that was relied upon primarily. It was mentioned at the very end by the district court. Okay, so is there information that was not in the indictment that Wilson complained about? In other words, if that is a public disclosure, does that do your case in? No, it does not because really the only thing in the record is that he was accused of stealing logs that were part of the project. And when you say he, you mean? Mr. Green, the federal official. And so, as you can see, way back in … What else, sort of give us, what else is in the, in your client's claim that was not in the indictment? The important thing about my client's claim, the primary allegation was that there was this conspiracy between the two federal officials, Green and Tipson, with Keith Orr, who was an employee of the Graham district. And so Keith Orr would apply for this money and do the work, and he would be the front man, and the two federal officials would provide money for him, and then they would split the profits. So this was nowhere. And that's nowhere in the indictment of Wilson. Nowhere in the indictment. Green was the only one that was indicted. And so you have, if you look at the USDA report, the label on it specifically prohibits its dissemination beyond the specific people, distributees. And then with respect to the audit report, that was, they only generated, I think, four or five copies to go to the different government agencies. Now, another reason why Karen Wilson, even if she derived information from that report, it was not from a public disclosure, because she was a government official herself. Albeit a lowly government official, but she was the secretary for the Graham district. In other words, she would be the person the report would come to. And so she's a government official, to say that she is a member, to equate her with a member of the public, just doesn't make any sense. Because at that point, it's just being distributed to the government agencies. In fact, there's nothing in the record that … But you see, that's kind of weird, that it's disclosed to her because she's a public official. And then she can bring this action. Well, we also argue that she didn't really learn the gist of her actions. I thought that was your argument. It's both. But really, if you look at the 1995 letter, which predates the audit report, it shows that she is telling the investigators, about the conspiracy, that Keith Orr is not allowed to have the money because he's an employee of the district. And so therefore, you have stand-alone claims that are sufficient, that are disclosed in the 1995 letter, that she issued prior to the issuance of the audit report. So it's logically impossible for her to have gotten that information from the audit report. And so that's why it's clear error to say that she derived her knowledge of those claims from the audit report when her letter setting forth those claims predates the audit report. The same thing with the USDA report is that she, in her statement, the 1996 statement, it shows that she knew about Greene, the federal official, stealing the logs before the USDA report came out. But there's absolutely no evidence that that report was ever disclosed to anyone other than the law enforcement officials prior to her filing her complaint. So it's your submission that neither one of these reports were disseminated to anybody but government officials, either state or federal or local? Yes, there's nothing in the record that indicates they were ever, in fact, all the evidence is to the contrary. With the USDA, it was prohibited to distribute it to anyone else. And with the audit report, you had a limited number of distributees. It went into their file cabinets and there's no evidence it was ever distributed to anyone else other than those agencies. And if the Freedom of Information or Public Information Act request had been made, somebody might have been able to obtain that report, right? Yes, there's no evidence of that. But also, as a government official, she gained her knowledge before, she got one of the first copies before any of those requests could have ever been made. So she learned from a non-public disclosure. So there's absolutely no way she could have learned it from a public disclosure. And again, it's common sense, she's the only person that could have been a relator and learned that the other people she was working with were the conspirators. So, you know, if she's not able to bring a case where she learns about it, then I think there's serious concerns that the construction of the public disclosure bar is too narrow. Because she was working directly with two of the conspirators. It was a very small office. She was the only other person besides Keith Orr who was an employee of Graham District. And then the federal official was working in the same office. So you have two out of the three people were the conspirators. She's the only one there. So I think it really is very troubling if she's the only non-conspirator in this whole situation and she doesn't pass muster as far as being a proper relator. Thank you. All right. Thank you for your argument. Now your colleague has outlined for us to whom these reports were sent. And do you have, is there any basis in the record for changing what he said with respect to that? There is a basis, Your Honor. My police clerk, Sean Parent, for Graham County and the commissioners. There is a basis for clarifying that. Appendix 341, Karen Wilson, who again was a district secretary for the Graham District, says as soon as the audit was available, I requested the North Carolina Public Records request and got a copy of it. Now to say that Ms. Wilson does not count as a member of the public, that it's a public disclosure because she's employed by the government, I would contend would effectively insulate anybody who's a government employee from being subject to the public disclosure bar. This court has said, this court has not defined what a public disclosure is in the context of a false claims act. But lower courts have said generally available to the public, in the public domain, or affirmatively provided to others not previously informed thereof. Ms. Wilson again at 342, excuse me, 341, and as Judge Ridinger found in his order at Appendix 704, she received a copy. That ends the inquiry as to whether or not the Graham County audit report was publicly disclosed. I am not – There's no information in the records that anybody but her requested a copy that you regard as the public. That's correct, and I think the – So it's her request for the copy that you think makes this publicly disclosed. Yes, I think that means it's generally available to the public. But that's slipping into another argument. I'm asking you if the record here shows that, in fact, anybody else did request. No, you are correct, Judge Motz. The record does not reflect that anybody other than Ms. Wilson requested, although I can – And you reject the argument that one of our sister circuits has said that it doesn't matter if you have a Freedom of Information Act or Public Information Act statute that would have made the information available if nobody would leave aside Ms. Graham for a moment or leave aside Ms. Wilson for a moment that no one requested the information. You would reject that rationale. I would not reject it, but again, I keep on coming back to the point that the test is whether or not it's equally accessible to the public. The only way Ms. Wilson got a copy of the audit report – I'm not contending the USDA report is the same analysis. But the only way Ms. Wilson got a copy of the Graham County audit was by requesting a copy. It's therefore accessible to the public. If you look at Appendix – Well, tell me then how that's different from what the – I think it's the 11th Circuit said because it would have been available to the public under a Freedom of Information Act request or a Public Information Act request, right? And you're saying the fact that it's equally available to the public, you come to the same place, and I'm not sure how you distinguish that case. Well, my recollection of the 11th Circuit case talks about it being potentially discoverable. In theory, it may be ensconced in a filing cabinet, and you actually have to request it by a court. But we're leaving aside now Ms. Wilson and her getting this information. And so how is this anything other than potentially discoverable by the public, just as it was in those cases? I can't answer that question without coming back to the fact that Ms. Wilson got the report by requesting it. I think in those other cases, they talk about the potential. You need to do a request to FOIA, and there may be ensconced in a dusty filing cabinet. But here you actually have Ms. Wilson getting a copy of the report. And she got a copy of the report before she made any complaints? We went – we did a little timeline? Your Honor, if you do a timeline – The 1995 letter for December 7, 1995, did she have the report then? No, she did not. Your Honor, that letter is at 388, and that letter is important for several reasons. That letter is what? It's important for several reasons, particularly when you get to the issue of whether or not she derived the allegations in her third amendment complaint from the Graham County audit. The reason 388, this letter, is important is what is not in this letter. Ms. Wilson does not mention anything about bidding being required. She does not mention anything about Keith or having a conflict of interest. And she's also not specific with the seating. Now, five months later, she gets the audit. And again, that's at 378 to 383. What that audit says – She gets it the day of the issue. Your Honor, the testimony in the record is she got it as soon as it was available. The audit was April 26, 1996. She did not give Your Honor an exact date when she got it, but it was after April 26, 1996. And it was in 1996. Yes, Your Honor, it was. And if you look at the audit, it's remarkably similar to her third amendment complaint. And the reason I say that, the audit has three findings. At 383, Mr. Orr was not approved an inspector. 383, there was no bidding for the projects. And 382 to 383, the seating was not actually done. Her third amendment complaint has the exact same allegations as contained in the audit, which was not contained in her 1995 letter to Richard Gallo. That third amendment complaint at Appendix 5031A, Orr prohibited from doing the work under the Code of Conduct. Number two, Orr did not bid for seating or cribbing at Appendix 5031A. And number three, some of the work certified was not done at Appendix 5131E. So if you talk about a timeline, in December of 1995, she had suspicions. We're not claiming she did not have suspicions. But there's a difference between saying, you know what, you need to look into something, which she did, versus having the information to be, in this case, an original source, which she was not. This court in both Brewer and Ratliff has said a court can look at the remarkable similarities between the public disclosure, the audit, and the third amendment complaint. The only way you get it being a public disclosure, the audit report, is that it was given to her. Yes, Your Honor. And she's, in your view, a matter of the public, even though she works for the government. Right? Yes, Your Honor. Yes. The last question before the trial court was whether or not Ms. Wilson was an original source. And there are three reasons why Judge Reininger did not err in holding that. She was not an original source. The first is her actions before the audit. She was the Grand District Secretary. She made no complaints about conflict of interest, no bidding. In fact, at Record 386, she says, in response to a question, what did you tell people prior to the audit? She says, I'm not sure to some degree. I'm sure I told them about it, but I don't know specifically. Then you have the letter to Mr. Gallo in December of 1995, where she says, most of the time the SWCD and Graham County has been misinformed and kept in the dark, and none of the figures match because we don't know who was billed for what or why. That's before the audit. Let's look at after the audit. Her statement to Mr. Golick in November of 1996, which is at Record 136 to 142. At 139, she tells Mr. Golick that Richard Green never told us about bidding. Well, that was not contained in her letter to Gallo in December, but was contained in the audit and was contained in the 30-minute complaint. At 139, she tells Mr. Golick, Keith Orr has a conflict of interest. That is not contained in her letter to Gallo in 1995, but is contained in the audit and is also contained in the 30-minute complaint. And thirdly, the issue of how much seeding is not done at 139. Again, that is not contained in her letter to Gallo, but is contained in the audit and in her 30-minute complaint. Let's look at what the government officials have to say. And this is important because it shows that she derived her allegations not from independent, not from doing her own research, but from the audit. The government officials all say Elizabeth Caldwell, who is the contract specialist, Howard Tew, who is the engineer. Bidding is not required. Keith Orr can do the work. The only information that Keith Orr couldn't do the work is it was a conflict. Because of the code of conduct or because of his job came from the Graham County audit report. That's the only thing in the record that says that, indicating that her erroneous theory comes from that Graham County audit and not from her own independent research. The trial court was correct in finding that Ms. Wilson did not prove subject matter jurisdiction by a preponderance of the evidence. And for the reasons stated in our brief, I would ask you to affirm the trial court's grant of our motion to dismiss. Did you make this argument that disclosure to her constitutes public disclosure? Disclosure of the audit report to her? Your Honor, I believe we did. I know. I believe we did. Do you have some time reserved for rebuttal? No, Your Honor, I do not. Well, maybe your colleague can tell me where that might be found in your brief. Yes, Your Honor. Thank you. Thank you. I think we have two people arguing, and then you'll have a chance to rebuttal. May it please the Court, Your Honors. I'm Marty McCracken, and I do represent the Graham County Soil and Water Conservation District, the Cherokee County Soil and Water Conservation District, and the individual commissioners named herein in their official capacity. And I can list those folks if you'd like. There's quite a few. All right. Pardon me? That's fine. Okay. Go on. As this Court is well aware, the burden is on the appellant to establish the Court's jurisdiction. He attempted to do so in front of Judge Ridinger. Under this Court's precedent, Judge Ridinger was charged with making findings of fact, his findings of fact that support his determination of whether jurisdiction exists in this case or not. This is subject matter jurisdiction. It's obviously not personal jurisdiction. His conclusions in that regard, his findings of fact, are reviewed for clear error by this Court. His legal conclusions are reviewed de novo. In this case, Judge Ridinger's findings of fact that Ms. Wilson was not an original source are not clearly erroneous and are clearly supported by facts in the record in this case. Judge Motz has touched extensively on whether the only evidence of public disclosure was a disclosure to Ms. Wilson. I have an admission from your co-counsel that that's the case. I would argue, Your Honor, that I disagree as much regard as I have for Mr. Perrin. I disagree with him slightly as to that. I would direct the Court's attention to Judge Ridinger's order, page 24, and the succeeding documents. 701. Document 353. Judge Ridinger's order, Memorandum of Decision and Order. Document 353. That doesn't really, what we look at is the J.A. Appendix, page numbers. I'm sorry, I don't have a copy of the general appendix. You don't have the appendix. It will easily be found. His order, page 24, translates to page 701 of the appendix. And it's not a huge point. It merely established Judge Ridinger's finding that the audit report was disseminated to Graham County, the Graham County Board of Commissioners, the local government commission, the Division of the North Carolina Soil and Water Conservation, and I believe the local district. That's not a finding. He says that's what the argument was. The defendants argued that. How is that different than what your colleague said? I asked him, aside from government entities, was there any disclosure? He said, no, the only disclosure, and I understand you can make any arguments you want about those entities, whether it's local or state or whatever they are. But the only disclosure he was relying on was the disclosure to Ms. Wilson. Yes, ma'am. I would contend that disclosure to, since you're frustrated and I don't want to fail to answer your question. Well, who is the other person besides these various agencies? They're not agencies, ma'am. Graham County Commissioners are an independent elected body. Okay. Aside from these public officials and public agencies. There is no evidence in the record that there was a disclosure to an individual other than Ms. Wilson. And that's consistent with Judge Ridinger's opinion. Yes, sir, it is. Yes, sir, it is. But my – And what I was asking him, and I was hoping you were going to tell me, is where you argue in your papers to us that there was, that the disclosure to her constituted a public disclosure. So the audit report to her. I take your argument, you know, this first element is there's not a public disclosure. And I understand that you say that the audit report was given to her. I didn't see where you had argued that the giving of the audit report to her was a public disclosure. But maybe it is. That's what I'm looking for. In looking at our brief, I do not see a specific argument to that effect. Thank you. Thank you. Your colleague can keep looking and you can keep arguing. If you have any late-breaking developments. Go ahead. So, in any event, Your Honor, under the standard of review in this case, Judge Ridinger's finding that she was a, that she was not an original source, the document had been disclosed, and that her allegations based on it is clearly supported by evidence in the record. Additionally, as I mentioned earlier, I represent the Cherokee County Soil and Water Conservation District. There was not an audit conducted in Cherokee County. Ms. Wilson's allegations against Cherokee County Soil and Water Conservation District were essentially a me-too argument that similar transactions took place. Judge Ridinger dismissed that almost out of hand, noting that she had no knowledge by her own testimony of what had happened in Cherokee County. She did not attend Cherokee County Soil and Water Conservation District boards. She did not review the meetings. At best, she had occasionally talked to the district secretary in Cherokee County. Well, doesn't that go to the sufficiency of the complaint, not whether there's jurisdiction? No, ma'am. As to Cherokee County, there was no audit. The audit did not cover Cherokee County. Uh-huh. No, I heard you on that. She simply had no personal knowledge of anything that happened in Cherokee County. She said it in her complaint, or she said it in her deposition? She said it in her deposition. Well, that's what I'm saying. Since their complaint stands, whatever it is, you have a deposition that you can now impeach her and say, Yes, ma'am. You haven't made a claim under 12b-6, but I don't know that that deprives the court of jurisdiction. But, Your Honor, the court is not reviewing Judge Reidinger's under a 12b-6 standards. Correct. The plaintiff does not get the benefit of having her allegations assumed to be true for our motion dismissed. Judge Reidinger is charged with determining subject matter jurisdiction. These were jurisdictional. These are jurisdictional, yeah. So she does not get the benefit of the doubt. By her own admission, she was not an inspector in Cherokee County. She was not an inspector in Graham County. She was not an inspector in Cherokee County. She had no personal knowledge of what took place, but instead made an allegation that, upon information believed, similar transactions took place. There is nothing to indicate that she is an original source of any allegation regarding any activity in Cherokee County. If I may yield the remaining two minutes of my time, with the court's permission, back to Mr. Perry to address. Does he have anything for us? If you'd like an address. You put him on the spot. Yeah. Judge Mott's on page 10 of our brief. It's the second full paragraph. What page? Page 10, Your Honor. Dan. Yes, sir. There's a reference to North Carolina public record on the second, excuse me, third sentence, is what I was relying upon of that particular paragraph. Under the North Carolina Public Records Act, members of the public could request and receive. I'm sorry, I don't. Second, the audit was prepared by Kristen Hughes. Where are we? I'm not sure. I'm on page 10. Page 10, it's. Are we in the second paragraph? Yes, the second full paragraph. The second full paragraph, okay. Sentence one, sentence two, sentence three. It is the third sentence. As a recipient of federal funds? No, my pages may be. It's actually the second sentence above from that. Second? Yes, ma'am. The audit was prepared by Kristen Hughes. One more sentence, though. Under the North Carolina Public Records. Yes, yes. That's where the reference was, Judge Mott's, to. Members of the public could request and receive the audit, which the realtor did as soon as it was available. That is the argument related to your question as to whether or not we made the argument that since she requested it, it's equally accessible to the public. You can see my confusion. Yes, Your Honor. I thought that you thought that because of the North Carolina Public Records Act, members of the public could request. I thought that was your argument. Well, and. But that's not your argument. Well, no. I mean, that's a dead letter now with the amendment since it's only federal sources. But it's part of our argument. The North Carolina Public Records Act says 132-1.4, public records in North Carolina are records of the people. Now, we're not relying solely on that. We're relying on that plus the fact that Ms. Wilson admittedly requested and got a copy of the audit in her quotes as soon as it was available. Okay, but when you were answering me just now, you said, no, you weren't arguing that members of the public could request and receive the audit. That was now a dead letter after the amendment. Yes, Your Honor. Because you said. Yes. Is that right? Yes. Okay. And by that, I'm referring to the North Carolina Public Records Act since now sources are exclusively federal after the amendments. Under the North Carolina law? No. Can that be? Well, and we may – I'm not sure I understand your question, Your Honor. Well, I'm not sure I understand your clarification. I thought you were saying that under the amendment to the federal statute, you were no longer saying – making this argument. Well, and I'm no longer making it, but we can't anymore post amendments because the sources are now exclusively federal, and the North Carolina Public Records Act deals with state and local public records. But in this particular case, I think really it's twofold. If we had here – if we had a situation where it was a public record and Ms. Wilson didn't request it, then I wouldn't be making an argument. What we have here is it's a public record, and she requests it as a member of the public, gets it, and looks at it. Did she say, as a member of the public, I want this record? Did she say that I work here and I want this record? Do we know what capacity she was – No, Your Honor, we don't, but what I would say is – We don't know how she requested it. We don't, but what I would say is – Whether it was written or oral or whatever. That's correct, Your Honor, but what I would say is the – And we don't know why they gave it to her, whether she was – whether she worked in the office. Well, North Carolina – They wouldn't give a report like that unless somebody made – somebody nodded that they didn't know that in the office made some sort of public information act. Right, and in North Carolina, it's mandatory. Is that right? Would you agree with me on that? Yes, I would. Yes, yes, I would. But, again, what you have here, you have – I don't know if she got the report by – I don't know how she got it, if she was a written request, if it was oral. But I do know she requested it not as a member of the Soil and Water Conservation District because if that were true, then there was no reason to request it since the audit was actually sent there. She said, I made a request for it as soon as it was available, and I got it. That's the evidence. Okay. I don't think we have – thank you very much. Thank you. Thanks for your time. Well, what about that argument? Well, if I may clear this up, Your Honor, if I could invite your – you to direct your attention to page 378. That's the cover letter for the audit reports that were sent to Graham County. And if the last sentence talks about they sent the copies, the copy for Graham County Soil and Water Conservation District to Graham County. So, Ms. Wilson was the custodian of all the Graham District records. And she requested Graham County District, the copy, Graham District's copy from Graham County. That's why she requested it, because she was the custodian of the records, and they had a copy for Graham District there at Graham County. Because it was sent there – one copy was designated for Graham District. Do you think she saw this letter and the things when they came in? Is that what you think? I think that she knew there was a copy, because this is a very small community. She's talking to Graham County, the people there, all the time. She has to work with them. And that's really the reason she got it right away, is because Graham District, there was a copy specifically for them. She's the custodian for Graham District, of all the records. She did not ask for it as a member of the public. Well, I'm not sure quite how that cuts one way or the other. Suppose that she was, I don't know, a county commissioner, and then she decided to bring this case. So that she was sent a copy of this report. Right. And then she brought this case on the basis of that. The public disclosure bar, the first step is a complete negative. Did the relator get the information, derive it, the knowledge, from a public disclosure? At this point, it's not even, you can't even say it's a public disclosure. Because it hasn't been, it's potentially. No, no, no. I'm not so sure. Well, you think that the president of the county council, or whoever, whoever is a rightful person in person that did get this report, it was addressed to that person, and the person got the report. And then they brought this action? Yes. In fact, there's... That said they would have a KETAM action? There's closer cases where you have federal employees. And there's a lot of case law that's developed... And they did it because they are federal employees? There's a lot of case law. There's some federal employees that can bring... They get the information because they're federal employees. There's a concern because they're federal employees. But there's case law in some circumstances a federal employee can bring a KETAM action. But here you don't have that concern because they're not a federal employee. So, yes, there's no prohibition under the public disclosure bar prohibiting such a person from bringing it. We don't know when she got it or how she got it. Well, it's in the record that she got it just about as soon as the other side has conceded that just about as soon as it was issued, she got a copy. She requested the copy. She requested it and got it. Yes. That's what the record shows. This letter you got is going to Sharon Crisp, who is the Graham County accountant. It wasn't addressed to Ms. Wilson. Right. It was addressed to Graham County, and so she needed... And it's from Crisp Hughes. Is that the same Crisp? That's the... Is that Sharon Crisp? No. That's the accounting firm. Well, she's the accountant, it says. And it's from her firm to her. Her name is Sharon Crisp. The first name of the accounting firm is Crisp. Are they all the same person? It's not. It's different. In fact, that came up during the case. Sharon Crisp is working for the county, Graham County. We know that. Is she also a partner in this accounting firm or is her husband? I don't think so. She's working for Graham County. Right. The accounting firm is working for Graham County. It was an independent private CPA firm. So how is she related to these various... It's sent to Sharon. She's not Sharon. Four copies. Yes, she was receiving it on behalf of Graham County is my recollection. Your client was? No. This Sharon Crisp was working for Graham County. She received these four or five copies. Then my client called up Graham County and said, Hey, give us our copy. And that's how she got it. But they sent it to a bunch of other people according to this letter. Well... Sent her four copies. They sent a copy to the local government commission, a copy to Donna Muffet. Well, the last sentence... And another copy to the Graham County Soil and Water District and a copy to the U.S. Department of Agriculture. The last sentence... That's about eight or nine or ten copies. The last sentence makes clear that Graham County... Graham District's copy was sent to Graham County. I'm sending you additional copies for these other entities in case... But Sharon Crisp is the accountant. Yes. Graham County accountant. Doesn't say whether she's an employee of Graham County or an outside accountant, whatever she was. But then it comes from Crisp. And Hughes, which is an accounting firm. It sounds like it's an accounting firm. Do we know from the discovery that Sharon Crisp is a county employee? I'm sorry, Your Honor. It's been many years. I don't remember that nuance. My recollection is she is a government official for Graham County. She does their bookkeeping for Graham County. Do we know from your client's deposition what she did? Who did she contact to get this thing? No, I don't think it's in the record who she contacted at Graham County. But it says she contacted Graham County and requested that copy. Does it say that she contacted Graham County? She requested the audit as soon as it was available. From Graham County. And, you know, she was talking to the auditors during the whole period of time. So it's a very reasonable inference that she knew that Graham District's copy  from Graham County, as the letter shows that that was the case. I would like to just point out that the 1995 letter did show. I'm sorry, could I just finish my thought? Yes. It actually did show the conspiracy and the conflict of interest. What page is that on? Page 7 of my brief, but it's 388 of the. 388. Yes. Her statement says the auditors inform me that Keith, Keith Orr is a salaried employee, should have never received these funds. Because he works for Graham District, conflict of interest. Okay, can you help us? There's a single space letter not typed by my assistant, so I can't read it. So maybe, I'm at JA 388. Can you tell us what paragraph you're talking about? Let's see here. Keith Orr. Yeah, this sounds like Keith Orr. The second, the one, two, three, fourth paragraph, right? It's the, well, it's the second paragraph. I was told by Keith Orr, and it talks about the conspiracy, dividing the profits. And then, the auditors inform me that Keith, as a salaried employee, should have never received these funds. That's the conflict of interest there, that she's informing the government about. And again, there's no, there's no assertion that the conversations with the auditors was a public disclosure. No one's arguing that. Okay, what about the argument about the other county? Okay, in a nutshell. The testimony that she had no information about Cherokee County. In a nutshell, Mr. McCracken is arguing original source, but you never get to original source unless you show that Ms. Wilson derived her allegations from an applicable public disclosure. And then, if the answer is yes, then she can still save her case. If she said in deposition that she had no information about Cherokee County. No, she, I'm sorry, she gained her information from conversations with her counterpart at Cherokee, which would not have been a public disclosure. It's not one of those sources listed in the statute as a public disclosure. Somewhere in her deposition, I'll find that. I will not find her saying, I don't have any information about Cherokee County. Correct. She will say that she didn't have necessarily direct information, but she didn't derive the information from a public disclosure. It was from those conversations, and her counterpart shared records with her. And this is something we want to encourage whistleblowers to do, is investigate and bring lawsuits based on an investigation. And that's what she did with Cherokee. Thank you very much. Thank you. Thank you very much. We will come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, Robert B. King, Arenda L. Wright Allen